William W. Funderburk, Jr. (Bar No. 176244)
wfunderburk@candffirm.com
Anna L. Cole (Bar No. 258312)
acole@candffirm.com
Castellón & Funderburk LLP
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017
Tel:   (213) 623-7515
Fax:   (213) 532-3984
Attorneys For Defendants

Jason Weiner (Bar No. 259264)
jweiner.venturacoastkeeper@wishtoyo.org
Wishtoyo Foundation/Ventura Coastkeeper
3875-A Telegraph Road #423
Ventura, CA 93003
Tel: (805) 823-3301
Fax: (805) 258-5135
Attorneys for Plaintiffs

JS–6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURA COASTKEEPER, a program of THE WISHTOYO FOUNDATION, and THE WISHTOYO FOUNDATION, a non-profit corporation,<br>          Plaintiffs,<br>     v.<br>E.J. HARRISON & SONS, INC.; NEWBURY DISPOSAL COMPANY, INC.; SANTA CLARA VALLEY DISPOSAL, INC.; RJM COLLECTION SERVICE; HARRISON BROTHERS ENTERPRISES, LLC; American RESOURCE RECOVERY, INC.; E.J. HARRISON & SONS RENTALS, INC.; E.J. HARRISON & SONS RENTALS,<br>         Defendants. | Case No. CV10-10042 AHM VBKx<br>Hon. A.Howard Matz<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

CASTELLÓN &
FUNDERBURK LLP

**WHEREAS,** Ventura Coastkeeper is a program of the Wishtoyo Foundation, a non-profit public benefit corporation.  Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal water and watersheds.  The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of the coastal communities, cultural resources and the environment;

**WHEREAS**, Ventura Coastkeeper and Wishtoyo Foundation are referred to herein as "Coastkeeper" or "Plaintiff";

**WHEREAS,** E.J. Harrison & Sons, Inc. is referred to herein as "Harrison" or "Defendant";

**WHEREAS,** Defendant is the owner and/or operator of the refuse vehicle and refuse container maintenance and storage facility (SIC Code 4212) located at 1589 Lirio Avenue, Ventura, California, 93004 ("Facility");

**WHEREAS,** the following entities do not conduct and have never conducted activities at the Facility that are regulated by the California General Industrial Stormwater Permit:  Newbury Disposal Company, Inc.; Santa Clara Valley Disposal, Inc.; RJM Collection Service; Harrison Brothers Enterprises, LLC; American Resource Recovery, Inc; E.J. Harrison & Sons Rentals, Inc.; and E.J. Harrison & Sons Rentals.  As such the listed entities in this paragraph do not discharge and have never discharged storm water associated with industrial activity at the Facility;

**WHEREAS,** based on the representation of the entities listed in the paragraph above, Coastkeeper dismisses Newbury Disposal Company, Inc.; Santa Clara Valley Disposal, Inc.; RJM Collection Service; Harrison Brothers Enterprises, LLC; American Resource Recovery, Inc.; E.J. Harrison & Sons Rentals, Inc.; and E.J. Harrison & Sons Rentals with prejudice for claims alleged in the Complaint and first amended Complaint through the Effective Date;

**WHEREAS,** on October 26, 2010 and January 13, 2011, Coastkeeper served

CASTELLÓN & FUNDERBURK LLP

ATTORNEYS AT LAW

Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with notices of intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA") and the State of California's General Industrial Storm Water Permit[1] ("Storm Water Permit");

**WHEREAS**, on December 29, 2010, Coastkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. CV 10 10042 entitled *Ventura Coastkeeper, et al. v. E.J. Harrison & Sons, Inc., et al.*("Complaint");

**WHEREAS,** on March 18, 2011, Coastkeeper filed a first amended Complaint in this action;

**WHEREAS**, Harrison denies all allegations of the Complaint and first amended Complaint;

**WHEREAS**, Coastkeeper and Harrison (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and first amended Complaint without further proceedings;

**WHEREAS**, Defendant does not admit that the Volume-Based Compliance Requirement, as set forth in Paragraph 8, is indicative of compliance with BAT/BCT standards.  However, in the spirit of cooperation to settle this matter, Defendant has compromised, and has agreed to enter into this Consent Decree and to comply with the provisions of this Consent Decree;

---

[1]  National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit").

CASTELLÓN &
FUNDERBURK LLP

Attorneys At Law

**WHEREAS**, Defendant does not admit that the E. coli numeric limit, as set forth in Paragraph 12, is the proper limit to be applied to the Facility's storm water discharge.  However, in the spirit of cooperation to settle this matter, Defendant has compromised, and has agreed to enter into this Consent Decree and to comply with the provisions of this Consent Decree;

**WHEREAS**, Coastkeeper and Harrison agree that the Consent Decree is an actual agreement that is the product of good faith, arms-length negotiations;

**WHEREAS**, all actions taken by Harrison pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**1.** The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

**2.** Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

**3.** The Complaint and first amended Complaint state a claim upon which relief may be granted against Harrison pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

**4.** Plaintiff has standing to bring this action;

**5.** The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

# I.   **OBJECTIVES**

**6.**      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Section 101 *et seq*. of the CWA, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Coastkeeper in its Complaint and first amended Complaint.  In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA.  Specifically, Receiving Water Limitation C(2) in the Storm Water Permit requires that the Facility "not cause or contribute to the exceedance of an applicable water quality limit."  Effluent Limitation B(3) of the Storm Water Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").  Defendant is required to develop and implement BMPs necessary to comply with the Storm Water Permit's requirement to achieve compliance with Water Quality Standards and BAT/BCT standards.  BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facility sufficient to achieve the numeric limits detailed in Table 1 below.

# II.   **COMMITMENTS OF THE PARTIES**

## A.   **Industrial Storm Water Pollution Control Measures**

**7.**      Defendant shall implement the following BMPs to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA at the Facility: (1) divert roof rain gutters from commingling with industrial runoff from the following areas: warehouse #1, mechanic shop, front office, welding shop, paint booth, warehouse #2, and warehouse #5; (2) treat catch basin numbers 3, 5, and 6 with a treatment control that complies with all regulatory requirements; and (3) eliminate SW-2 by connecting SW-2 and SW-3 in the employee parking lot.  Defendant is not limited

to implementing these BMPs, and shall amend its Storm Water Pollution Prevention Plan ("SWPPP") in accordance with paragraph 19 of this consent decree to include these BMPs. If the SWPPP does not effectively prevent discharges or reduce contamination in storm water discharged from the Facility in a manner sufficient to achieve the Numeric Limits detailed in paragraph 12, below, Defendant shall implement additional BMPs developed pursuant to this Consent Decree. The SWPPP site map for the Facility is attached hereto as **Appendix A.**

8.      The storm water pollution control measures required by this Consent Decree and the Storm Water Permit shall be designed and operated to manage through treatment and/or diversion at least 95% of the average annual runoff volume ("Volume-Based Compliance Requirement").  The storm water pollution control measures shall be operated throughout the entire year. The Volume-Based Compliance Requirement will be based on an assumed runoff coefficient of 0.9 and the 20-year rainfall record from 1990 - 2010 recorded by Ventura County Watershed Protection District rainfall gauges: 175 (Saticoy Fire Station), 132B (Saticoy-County Yard), and 175A (Saticoy-County Yard). For the purpose of this Consent Decree, properly documented discharges of storm water and/or storm water pollutants from the Facility in connection with rainfall events that cause runoff volume to exceed the Volume-Based Compliance Requirement is not a violation of this Consent Decree.

9.      As described in paragraph 15,17, and 18 below, for each Wet Season (the Wet Season is defined in the Storm Water Permit and for purposes of this Consent Decree as October 1st through May 31st), beginning with the 2011/2012 wet season, and for each year thereafter during the term of this Consent Decree, Harrison shall sample storm water discharges from the Facility for five (5) storm events per Wet Season, during the first hour of the discharge from the storm event if the discharge occurs during the Facility operating hours in paragraph 17 below, or within the first hour of Facility operating hours in paragraph 17 below if the storm

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

event commences before these hours and a discharge from the storm event occurs during the Facility operating hours (to the extent there are at least five (5) storm events during a particular Wet Season).

10.     As described in paragraphs 12, 13, and 14 below, beginning with the 2011/2012 Wet Season, and for each year thereafter during the term of this Consent Decree, storm water discharges from the Facility (except storm water discharges in a storm that causes runoff volume to exceed the Volume-Based Compliance Requirement) shall require Harrison to submit an Action Plan by June 30 of each year if any pollutant concentration in any such storm water discharge exceeds any one of the Numeric Limits set forth in Table 1 below.

11.     Non-stormwater discharges from the Facility not authorized by the Storm Water Permit shall be considered a breach of this Consent Decree.

**B.     Reduction of Pollutants in Discharges**

12.     Numeric Limits and Contaminant Reduction.  Contaminants in discharges from Facility discharge points shall not exceed the limits ("Numeric Limits") in Table 1.

**CONSENT DECREE**

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

**Table 1**

| Contaminant | Limit (All but pH and E. coli, expressed as milligrams per liter (mg/l); E. coli, expressed as Most Probable Number per 100 milliliters (MPN/100 ml) |
|---|---|
| pH | 6.5-8.5 |
| Oil and Grease | 15 |
| Total Suspended Solids ("TSS") | 100 |
| E. coli density | 235 MPN /100 ml |
| Biochemical Oxygen Demand ("BOD") | 30 mg/l |
| Chemical Oxygen Demand ("COD") | 120 mg/l |

**13.** <u>Action Plan for Table 1 Exceedances.</u>  Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if any sampling for any parameter during the wet season demonstrates that any parameter in any discharge from the Facility exceed the applicable limit for any parameter found in Table 1. In any year that an Action Plan is required, it shall be submitted by June 30 following the Wet Season.

a.      <u>Action Plan Requirements</u>. Any Action Plan submitted shall include at a minimum (1) the identification of the pollutant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each pollutant

exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall require that all BMPs are implemented before October 1 of the year the Action Plan is submitted. Anytime an Action Plan is submitted it shall also include a revised monitoring & reporting plan ("M&RP"). However, failure to implement the proposed BMPs due to the provisions outlined in the force majeure clause of this Consent Decree, shall not be considered a breach of this Consent Decree. The Action Plan must address treating runoff discharging from the site.

b. Action Plan Review. Coastkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Defendant shall have till October 1 to implement any additional non-structural or structural BMPs agreed upon by Defendant and Coastkeeper, subject to the force majeure provision of this Consent Decree. Within thirty (30) days from the date Coastkeeper comments on Defendant's Action Plan, Defendant shall provide a written explanation if Defendant refuses to develop and/or implement any of Coastkeeper's recommended additional BMPs. If any structural BMPs require any agency approval, then Defendant shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval. Coastkeeper's consent to Defendant's requested extension shall not be unreasonably withheld. Defendant shall notify Coastkeeper in writing when the Action Plan has been implemented.

**14.** Action Plan for Year 3 Wet Season. If at the end of the 2013/2014 Wet Season, storm water sample results demonstrate that Defendant continues to discharge storm water containing pollutants exceeding the limits set forth in Table 1, the Parties shall meet and confer by June 30, 2014 to (1) discuss the sample results, (2) discuss current BMPs, and (3) devise a mutually agreeable action plan ("Year 3 Action Plan"). The Year 3 Action Plan shall include time schedule(s) for

implementing any proposed BMPs, with all proposed BMPs to be implemented no later than October 1, 2014.  Within thirty (30) days of meeting and conferring, Defendant will develop and submit the Year 3 Action Plan to Coastkeeper. Coastkeeper will provide comments on the Year 3 Action Plan within thirty (30) days of receipt of the plan.  Defendant shall revise the Year 3 Action Plan to include Coastkeeper's comments.

### C.    Sampling, Monitoring, Inspecting, and Reporting

**15.**    <u>Sampling Program.</u>  Within thirty (30) days of the Effective Date, Defendant shall implement a revised <u>Monitoring & Reporting Plan ("M&RP")</u> for the Facility, as well as begin to conduct all sampling and monitoring required by this Consent Decree and/or the Storm Water Permit.  The revised M&RP shall require that the samples taken from the Facility's storm water discharges pursuant to the Storm Water Permit are analyzed for the constituents identified in Table 1 in addition to any other constituents required by the Storm Water Permit.

**16.**    <u>Coastkeeper's Review of Revised M&RP and SWPPP Site Map.</u>  If, after the Effective Date but prior to the Termination Date, Defendant anticipates any changes in the Facility's storm water discharge point(s), or either Defendant or Coastkeeper discovers a change in the Facility's storm water discharge point(s), Defendant shall submit a revised M&RP and SWPPP site map to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days prior to the creation or discovery of the new discharge point.  If Coastkeeper discovers the change in the Facility's storm water discharge point(s), Coastkeeper must promptly notify Defendant. Coastkeeper shall provide comments, if any, to Defendant within thirty (30) days of receipt of the M&RP and SWPPP site map. Defendant shall incorporate Plaintiff's comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

**17.**    <u>Sample Analysis and Sample Frequency.</u>  Defendant shall collect storm

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

water samples from each discharge location from five (5) storm events per Wet Season (to the extent there are at least five (5) storm events during a particular Wet Season).  For purposes of this Consent Decree, this includes any storm water discharge occurring during the Facility operating hours defined as: between 5:00 a.m. and 5:00 p.m. Monday through Friday (excluding company holidays), between 5:00 a.m. and 2:00 p.m. Saturday (excluding company holidays), or whenever storm water is intentionally released outside these hours ("operating hours").  Defendant must sample their storm water discharge(s) from each of the first five (5) storm events that produce a storm water discharge in each Wet Season, during the first hour of the storm event if the discharge occurs during the operating hours in this paragraph, or within the first hour during the operating hours in this paragraph if the storm event commences before the operating hours in this paragraph. Any failure to sample in one of the first five (5) storm events that produce a storm water discharge shall be documented.  Defendant must continue to sample its storm water discharges from each storm event that produces a discharge until a total of five (5) storm events that produce a discharge have been sampled.

**18.**     Defendant shall analyze the samples for the constituents identified in Table 1.  A California State certified laboratory shall perform all sample chemical analyses.  Defendant shall select laboratories and analytical limits such that, at a minimum, achieve method detection limits below the Numeric Limits in Table 1.

**D. Storm Water Pollution Prevention Plan**

**19.**     SWPPP.  Within thirty (30) days of the Effective Date, Defendant agrees to implement the SWPPP currently in effect at the Facility to incorporate all storm water pollution prevention measures and other requirements set forth in this Consent Decree and/or the Storm Water Permit.

**20.**     SWPPP Revisions.  Defendant shall revise the SWPPP as necessary to incorporate additional BMPs developed pursuant to this Consent Decree. Specifically, the SWPPP shall include a description of all industrial activities and

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

corresponding potential pollutant sources and, for each potential pollutant source, a description of the potential pollutants from the sources. The constituents identified in Table 1 shall be identified in the SWPPP, along with any other potential pollutants and corresponding potential pollutant source(s) at the Facility.

21. <u>Coastkeeper's Review of Revised SWPPP.</u>  If Defendant revises the SWPPP, it shall submit the revised SWPPP to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days from the date of revision.  Within thirty (30) days of Coastkeeper's receipt of the revised SWPPP, Coastkeeper shall provide Defendant with comments and suggestions, if any, concerning the revisions to the SWPPP.  Within thirty (30) days of Defendant's receipt of Coastkeeper's comments on the revised SWPPP and if Defendant agrees with Coastkeeper's comments, Defendant shall incorporate Coastkeeper's comments into the SWPPP and the SWPPP will be re-issued.  Any disputes as to the adequacy of the SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**D.   Employee Training**

22.    Within thirty (30) days of the Effective Date, Defendant shall develop a training program, including any training materials needed for effective implementation of the training program, to ensure that employees are properly trained to perform the activities described in subsections (a)-(d) below.  Such training program shall be specified in the SWPPP.  Training shall be provided by a private consultant or a representative of Defendant familiar with the requirements of this Consent Decree and the Storm Water Permit, and shall be repeated as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP.  All new staff will receive this training before assuming responsibilities for implementing the SWPPP. Defendant shall maintain training records to document compliance with this

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

paragraph, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of receipt of a written request.  Specific training shall include, but is not limited to:

a)  Non-Storm Water Discharge Training.  Defendant shall train all employees on the Storm Water Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are and how to avoid them;

b)  BMP Training.  Defendant shall train all employees responsible for BMP implementation and maintenance on the proper implementation and maintenance of the BMPs developed and implemented at the Facility;

c)  Sampling Training.  Defendant shall train all individuals performing sampling at the Facility pursuant to this Consent Decree or the Storm Water Permit on the proper sampling protocols;

d)  Visual Observation Training.  Defendant shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree or the Storm Water Permit.

**E.   Compliance Monitoring**

23.  Site Inspections.  Up to two representatives of Coastkeeper, and if Coastkeeper desires an attorney or other representative, may conduct one yearly site inspection ("Site Inspection") at the Facility for each year that this Consent Decree is in effect.  The annual Site Inspection shall occur during normal business hours and Coastkeeper shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during wet weather, and seventy-two (72) hours notice prior to a Site Inspection during dry weather.  Notice will be provided by phone, followed up by electronic mail documenting the phone call or voicemail.  During the annual Site Inspection, Defendant shall allow Coastkeeper and/or its representatives access to the Facility's SWPPP and monitoring records, and to all monitoring reports and data for the Facility.  During

1  the annual Site Inspection, Defendant shall allow Coastkeeper and/or its

2  representatives to collect samples of storm water discharges at the Facility.

3     **24.**  <u>Sampling Inspections.</u>  Upon twenty-four (24) hours notice,

4  Defendant shall grant Coastkeeper personnel access to the Facility up to two (2)

5  times per wet season that this Consent Decree is in effect for the purpose of

6  collecting samples of stormwater discharges at the Facility.

7     **25.**  <u>Reporting.</u>  After the Effective Date, Defendant shall provide

8  Coastkeeper with a copy of all compliance and monitoring data, including

9  inspection reports, related to the Facility's dry weather and storm water discharges

10  on a monthly basis.  After the Effective Date, Defendant shall provide Coastkeeper

11  with all laboratory analyses related to the Facility within seven (7) days of

12  Defendant's receipt of such information.

13     **26.**  <u>Document Provision.</u>  After the Effective Date, Defendant shall copy

14  Coastkeeper on all documents and communications related to water quality at the

15  Facility that are submitted to the Regional Board, the State Board, and/or any State

16  or local agency or municipality.  Such reports and documents shall be provided to

17  Coastkeeper concurrently as they are sent to the agencies and/or municipalities. Any

18  correspondence related to water quality received by Defendant from any regulatory

19  agency shall be provided within three (3) business days of receipt by Defendant.

20       **F.**  **Environmental Projects, Compliance Monitoring Funding**

21          **and Fees and Costs**

22   **27.** <u>Environmental Project A</u>.  Defendant agrees to make a payment of Fifty

23  Thousand Dollars $50,000 to California Trout, Inc. for projects designed to analyze,

24  reduce, prevent, or otherwise mitigate the ecological effects of storm water and

25  wastewater discharges into the Santa Clara River on adult and juvenile steelhead

26  migration in the Santa Clara River watershed as outlined in Exhibit A.  Defendant

27  shall make the mitigation payment in three installments as follows: a payment of

28  Fifteen Thousand Dollars ($15,000) within thirty (30) days of the Effective Date, a

second payment of Fifteen Thousand Dollars ($15,000) within sixty days of the Effective Date, and a third payment of Twenty Thousand Dollars ($20,000) within ninety (90) days of the Effective Date. All payments required under this paragraph shall be made to "California Trout, Inc.", and mailed via certified mail or overnight delivery to "California Trout, Inc.", attention: Alan Roesberry, Finance Director, 870 Market Street, Suite 528, San Francisco, 94102.  Defendant shall provide Coastkeeper with a copy of such payment.  Plaintiff agrees to provide Defendant with a final written report or a report describing the product of Environmental Project A within thirty (30) days of its completion.

     **28.**   Environmental Project B.  Defendant agrees to make a payment of Five Thousand Dollars ($5,000) to Central Coast Alliance United for a Sustainable Economy for street, storm channel, wetlands, riparian, stream, and river trash clean up projects designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and wastewater discharges into the Santa Clara River and its watershed as outlined in Exhibit B. Defendant shall make the mitigation payment in one installment as follows: a payment of Five Thousand Dollars ($5,000) within thirty (30) days of the Effective Date. All payments required under this paragraph shall be made to Central Coast Alliance United for a Sustainable Economy ("CAUSE") and mailed via certified mail or overnight delivery to "CAUSE", attention: Cameron Yee, 2021 Sperry Avenue, Suite 18, Ventura, CA 93003.  Defendant shall provide Coastkeeper with a copy of such payment.  Plaintiff agrees to provide Defendant with a final written report or a report describing the product of Environmental Project B within thirty (30) days of its completion.

     **29.**   Coastkeeper's Fees and Costs.  Defendant agrees to partially reimburse Coastkeeper for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter totaling Forty Thousand

Dollars ($40,000).  Defendant shall pay this amount in eight (8) monthly installments of Five Thousand Dollars ($5,000.00).  The first payment shall be due on the fourteenth (14th) day following the Effective Date.  Subsequent payments shall be due every thirty (30) days until the remaining seven (7) payments have been made. The payments required under this paragraph shall be made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph Road #423, Ventura, CA 93003, and sent via certified mail or overnight delivery.

**30.**   <u>Coastkeeper Compliance Monitoring.</u>   Defendant agrees to compensate Coastkeeper for time to be spent by legal staff or technical consultants monitoring Defendant's compliance with the Consent Decree. To this end, the Defendant shall pay Coastkeeper the sum of Nine Thousand Dollars ($9,000) within thirty (30) days of the Effective Date of this Consent Decree.  If the Defendant is required to submit an Action Plan to Coastkeeper by June 30, 2012 Defendant shall make an additional compliance monitoring payment in the amount of Twelve Thousand Dollars ($12,000) upon submission of the Action Plan.  If the Defendant is required to submit an Action Plan to Coastkeeper by June 30, 2013 Defendant shall make an additional compliance monitoring payment in the amount of Nine Thousand Dollars ($9,000) upon submission of the Action Plan. If the Defendant is required to submit an Action Plan to Coastkeeper by June 30, 2014 Defendant shall make an additional compliance monitoring payment in the amount of Twelve Thousand Dollars ($12,000) upon submission of the Action Plan. All payments required under this paragraph shall be made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph Road #423, Ventura ,CA 93003, and sent via certified mail or overnight delivery.

**31.**   <u>Stipulated Payment.</u>  Defendant shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree.  Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Defendant's discharges and

shall be awarded to Friends of the Santa Clara River and mailed via certified mail or overnight delivery to Friends of the Santa Clara River, attn: Ron Bottorff, 660 Randy Drive, Newbury Park, California 91320-3036.  Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline and make the payment via overnight delivery or by certified mail.  Defendant shall provide Coastkeeper with a copy of each such payment at the time it is made.

**32.**    Interest Payments. In the event of late payment of any of the sums due referred to in this Section F of the Consent Decree, the Defendant shall pay 3% interest to Coastkeeper, which shall accrue daily from the fifth day past the date the sum was due until the date the Defendant tenders payment.

**G.    Commitments of Plaintiff**

**33.**    Plaintiff shall submit this Consent Decree to the United States Environmental Protection Agency and the United States Department of Justice ("DOJ") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that EPA or DOJ object to entry of this Consent Decree the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

**III.    EFFECTIVE DATE AND TERMINATION DATE**

**34.**    The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice and the United States Environmental Protection Agency ("Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the United States Department of Justice and United States Environmental Protection Agency's receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review and the Court enters the final Consent Decree, whichever occurs earlier.

35.     This Consent Decree will terminate on its own terms five (5) years from the Effective Date.  However, if no numeric limit, as outlined in Table 1, is exceeded for two consecutive Wet Seasons (beginning with the 2013-2014 Wet Season), Defendant shall move the Court to terminate the Consent Decree and Coastkeeper shall not oppose this request.

## IV.    DISPUTE RESOLUTION

36.     This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.     <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section.  The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

38.     If the Parties cannot resolve a dispute by the end of the meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

39.     If Coastkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Coastkeeper shall be entitled to recover reasonable fees and costs incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.     In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendant's failure

to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint and first amended Complaint, up to and including the Effective Date of this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendant.

42.     Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.     Force Majeure. Defendant shall notify Coastkeeper pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of Defendant, due to circumstances beyond the reasonable control of Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant.  In no circumstances shall a claim of inability to pay be considered Force Majeure.

a) If Defendant claims impossibility, they shall notify Coastkeeper in writing within twenty-one (21) days of the date that Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree.  The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures

taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b) The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant, new deadlines shall be established.

c) If Coastkeeper disagrees with Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VI.   MISCELLANEOUS PROVISIONS

**44.**   Cooperation.   The Parties agree to cooperate with respect to aiding in the preparation, review, determination of content and message, and dissemination of mutually acceptable and consistent: press releases, public notices and postings, press articles, written external communications, and public reports made in relation to, or in regards to, this Consent Decree and/or lawsuit.

**45.**   Construction.   The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

**46.**   Choice of Law.   The laws of the United States shall govern this

1   Consent Decree.

2       **47.**    <u>Severability</u>.  In the event that any provision, paragraph, section, or

3   sentence of this Consent Decree is held by a court to be unenforceable, the validity

4   of the enforceable provisions shall not be adversely affected.

5       **48.**    <u>Correspondence</u>.  All notices required herein or any other

6   correspondence pertaining to this Consent Decree shall be sent by regular mail and

7   electronic mail as follows:

8       If to Plaintiff:

9   Jason Weiner
    Staff Attorney
10  Wishtoyo Foundation / Ventura Coastkeeper
11  3875-A Telegraph Road #423
    Ventura, CA 93003
12  jweiner.venturacoastkeeper@wishtoyo.org

13

14      If to Defendant:
    William W. Funderburk, Jr.
15  Anna L. Cole
16  Castellon & Funderburk LLP
17  811 Wilshire Blvd. Suite 1025
    Los Angeles, CA 90017
18  wfunderburk@candffirm.com
19  acole@candffirm.com

20
    With copies to:
21  Lynn Harrison
22  E.J. Harrison & Sons, Inc.
    P.O. Box 4144
23  Ventura, California  93007
24  lynnh@ejharrison.com

25      Notifications of communications shall be deemed submitted three (3) days

26  after the date that they are postmarked and sent by first-class mail.  Any change of

27  address or addresses shall be communicated in the manner described above for

28

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

giving notices.

49.   <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

50.   <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51.   <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

52.   <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

53.   <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54.   <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

55.   The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it

CASTELLÓN &
FUNDERBURK LLP
ATTORNEYS AT LAW

1  on behalf of the Parties, and to legally bind the Parties to its terms.

2      **56.**    The Parties agree to be bound by this Consent Decree and not to contest

3  its validity in any subsequent proceeding to implement or enforce its terms.  By

4  entering into this Consent Decree, the Defendant does not admit liability for any

5  purpose as to any allegation or matter arising out of this Action.

6      The undersigned representatives for Coastkeeper and Defendant each certify

7  that he/she is fully authorized by the party whom he/she represents to enter into the

8  terms and conditions of this Consent Decree and that this Consent Decree binds that

9  party.

10      IN WITNESS WHEREOF, the undersigned have executed this Consent

11  Decree as of the date first set forth above.

12  **IT IS SO ORDERED:**

13  Date:  September 22, 2011

14

15

16

17  JS-6

    Honorable A. Howard Matz

18  UNITED STATES DISTRICT COURT

    CENTRAL DISTRICT OF CALIFORNIA

19

20

21

22

23

24

25

26

27

28

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

1   APPROVED AS TO CONTENT

2

3                                           VENTURA COASTKEEPER AND
                                            WISHTOYO FOUNDATION
4

5   Dated:      July  23 , 2011

6                                           Mati Waiya, Executive Director
                                            Ventura Coastkeeper and
7                                           Wishtoyo Foundation

8

9                                           E.J. HARRISON & SONS, INC.

10

11

12  Dated:      July _____, 2011            _____

13                                          Ralph Harrison, President
                                            E.J. Harrison & Sons, Inc.
14

15  APPROVED AS TO FORM

16

17                                          CASTELLON & FUNDERBURK LLP

18

19  Dated:      July_____, 2011             _____

20                                          William W. Funderburk, Jr.

21                                          Attorney for Defendants

22

23                                          WISHTOYO FOUNDATION AND
                                            VENTURA COASTKEEPER
24

25  Dated:      July _____, 2011            _____

26                                          Jason Weiner

27                                          Staff Attorney for Plaintiffs

28

CASTELLÓN &
FUNDERBURK LLP
ATTORNEYS AT LAW

CONSENT DECREE

APPROVED AS TO CONTENT

VENTURA COASTKEEPER AND
WISHTOYO FOUNDATION

Dated:        July _____, 2011        _____
                                       Mati Waiya, Executive Director
                                       Ventura Coastkeeper and
                                       Wishtoyo Foundation

E.J. HARRISON & SONS, INC.

Dated:        July 21, 2011            _Ralph Harrison_____
                                       Ralph Harrison, President
                                       E.J. Harrison & Sons, Inc.

APPROVED AS TO FORM

CASTELLON & FUNDERBURK LLP

Dated:        July_____, 2011         _____
                                       William W. Funderburk, Jr.
                                       Attorney for Defendants

WISHTOYO FOUNDATION AND
VENTURA COASTKEEPER

Dated:        July _____, 2011        _____
                                       Jason Weiner
                                       Staff Attorney for Plaintiffs

1   APPROVED AS TO CONTENT

2

3                                                     VENTURA COASTKEEPER AND
                                                      WISHTOYO FOUNDATION
4

5   Dated:        July _____, 2011
6                                                     _____
                                                      Mati Waiya, Executive Director
7                                                     Ventura Coastkeeper and
                                                      Wishtoyo Foundation
8

9                                                     E.J. HARRISON & SONS, INC.
10

11

12  Dated:        July _____, 2011
                                                      _____
13                                                    Ralph Harrison, President
                                                      E.J. Harrison & Sons, Inc.
14

15  APPROVED AS TO FORM
16

17                                                    CASTELLON & FUNDERBURK LLP
18

19  Dated:        July 25, 2011
                                                      _____
20                                                    William W. Funderburk, Jr.
                                                      Attorney for Defendants
21

22

23                                                    WISHTOYO FOUNDATION AND
                                                      VENTURA COASTKEEPER
24

25  Dated:        July _____, 2011
                                                      _____
26                                                    Jason Weiner
                                                      Staff Attorney for Plaintiffs
27

28

1 | APPROVED AS TO CONTENT

2

3 |                                                 VENTURA COASTKEEPER AND
                                                    WISHTOYO FOUNDATION
4

5 | Dated:        July _____, 2011        _____

6 |                                                 Mati Waiya, Executive Director
                                                    Ventura Coastkeeper and
7 |                                                 Wishtoyo Foundation

8

9 |                                                 E.J. HARRISON & SONS, INC.

10

11

12 | Dated:       July _____, 2011        _____

13 |                                                Ralph Harrison, President
                                                    E.J. Harrison & Sons, Inc.
14

15 | APPROVED AS TO FORM

16

17 |                                                CASTELLON & FUNDERBURK LLP

18

19 | Dated:       July_____, 2011         _____

20 |                                                William W. Funderburk, Jr.
                                                    Attorney for Defendants
21

22

23 |                                                WISHTOYO FOUNDATION AND
                                                    VENTURA COASTKEEPER
24

25 | Dated:       July 25 , 2011          _____

26 |                                                Jason Weiner
27 |                                                Staff Attorney for Plaintiffs

28

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

24
**CONSENT DECREE**

**Exhibit A: Environmental Project**
**Santa Clara River Steelhead Migration Project**

This project will be conducted and administered by California Trout, Inc. (California Trout). The project will attempt to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and wastewater discharges into the Santa Clara River on adult and juvenile steelhead migration in the Santa Clara River watershed, and is limited to studies, implementation plans, and the implementation of projects that attempt to improve adult and juvenile steelhead migration in the Santa Clara River watershed.

The project will begin upon 30 days from the effective date of this consent decree, and will end when project funds are expended. The project deliverables are reports documenting the studies, implementation plans, and the implementation of projects upon their completion.

CASTELLÓN &
FUNDERBURK LLP

Attorneys At Law

CONSENT DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B: Environmental Project**
**Santa Clara River Watershed Community Trash Clean Up Project**

This project will be conducted and administered by Central Coast Alliance United for a Sustainable Economy ("CAUSE"). The project will attempt to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and wastewater discharges into the Santa Clara River and its watershed by reducing pollutants associated with discharges of trash into waterways and waterbodies. The project will include a minimum of 12 street, storm channel, wetlands, stream, and river community trash clean up events within the Santa Clara River watershed.

The project will begin upon 30 days from the effective date of this consent decree, and will end within 450 days from the effective date of this consent decree. The project deliverables are reports documenting the number of participants at the trash clean up events and an estimate as to the amount of trash picked up.

CASTELLÓN &
FUNDERBURK LLP

ATTORNEYS AT LAW

**CONSENT DECREE**

**Appendix A**

C:\Bios5\10-1010 = Harrison Corp Yard\440-Storm Water Quality Control\Civil-Survey\dwg\10-1010-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-000-ESGN01.dwg
01/11/11 7:51am-MHARRISON
XREFS: 10-1010-000-EBDM01.dwg HAR2TB.dwg HAR2TBS.dwg 10-1010-000-EUTM01.dwg 10-1010-000-EAMM01.dwg



E.J. Harrison & Sons, Inc.

# Storm Water Pollution Prevention Plan
## Site Map
### 1585, 1589, 1893, 1895 Lirio Avenue

Prepared By:

DW
DIAMOND WEST

civil engineering • land surveying • land planning

24005 Ventura Boulevard, Suite 100
Calabasas, California 91302
Voice: (818) 444-1900
Facsimile: (818) 223-9215
www.diamondwest.net

Prepared under the direction of:
Mike Harrison
RCE 57,320

10-1010.440

Appendix A
28